IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTOPHER COX, on behalf of :
himself and all others similarly :
situated, :
 :
    Plaintiff, :
 :
v. :
 :
STONE RIDGE AT VININGS, LLC, : CIVIL ACTION NO.
and THE CONNOR GROUP, A REAL : 1:12-CV-2633-AT
ESTATE INVESTMENT FIRM, LLC, :
 :
    Defendants. :

## ORDER

This case is before the Court on Plaintiff's Motion for Class Certification [Doc. 88]. Plaintiff Christopher Cox brings this suit on behalf of a class of past and current tenants of the Stone Ridge at Vinings apartment complex in Atlanta, Georgia. He alleges a host of state law claims for breach of contract, negligence, negligent, misrepresentation, breach of the implied warranty of habitability, violation of the Georgia Uniform Deceptive Trade Practices Act, and unjust enrichment. Defendants removed this case to federal court from the Superior Court of Fulton County, Georgia, pursuant to the provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C.§ 1332(d). The Court has now fully considered the parties' briefs along with tendered evidence and had the benefit of hearing extended oral argument on Plaintiff's motion. Although the evidence

thus far submitted indicates substantial maintenance and management issues may exist at the Stone Ridge Complex, for the legal and evidentiary reasons discussed below, the Court **DENIES** Plaintiff's motion.[1]

## I. OVERVIEW

Plaintiff Christopher Cox seeks certification of a class of current and former residents of the Stone Ridge at Vinings apartment complex ("Stone Ridge") owned and operated by Defendants. Plaintiff alleges that Defendants have maintained severely substandard, unsafe housing conditions in the Stone Ridge apartment complex in the regular course of their business operation and thereby harmed class members. These conditions, according to Plaintiff, include recurring and rampant mold, major water and pipe leaks and water intrusion, bug and rat infestation, and chronic maintenance, structural and other repair problems that are the predictable by-product of Defendants' alleged ongoing mismanagement of the apartment complex. Based on Defendants' alleged mismanagement and practice of allowing these conditions to fester, Plaintiff contends Defendants have violated their duties to the Plaintiff class under Georgia contract and tort law. Plaintiff further contends that Defendants' actions and inactions have denied class members their right to live in a safe and habitable environment consistent with their rental agreements, as guaranteed

---

[1] At the June 20, 2014 hearing, the Court granted Defendants' Motion to Strike the Declaration of Roland Freeman, and Defendants withdrew their associated request for fees. Accordingly, the Court **DENIES AS MOOT** Defendants' Motion to Exclude Freeman's testimony and Motion for Sanctions [Doc. 108].

under Georgia law. Plaintiff's motion seeks both economic damages[2] and injunctive relief on behalf of the class and is therefore brought pursuant to Rule 23(b)(2) and(b)(3) of the Federal Rules of Civil Procedure.[3]

The evidence Plaintiff has submitted suggests that a disturbing pattern of serious mold, water leakage, and maintenance issues has afflicted a host of residents' units within the apartment community. The affidavits of three individuals who worked as maintenance technicians during the liability period indicate that the Stone Ridge management intentionally sought to white wash significant mold problems by requiring that they literally paint over mold rather than remedying mold issues that could have created health and apartment habitability repercussions. (Pl. Exs. Docs. 88-40, 88-41, 88-42.) The affidavits of a variety of tenants as well as of two "experts" whose affidavits[4] the Court accepts solely for their lay empirical observations of the apartment complex also suggest that chronic mold, water leakage, and associated conditions were not isolated to a few apartments. The tenants' affidavits and depositions also indicate that tenants

---

[2] Plaintiff's motion does not seek damages based upon any medical injuries the plaintiff class members may have suffered. At oral argument, Plaintiff's counsel clarified that they had strategically decided not to assert medical damages claims because of the difficulties of proving causation and medical damages arising from mold infestation under state law tort principles. See, e.g., Roche v. Lincoln Prop. Co., 278 F. Supp. 2d 744 (E.D. Va. 2003).

[3] Plaintiff's counsel indicated at oral argument that in the event the Court was not prepared to certify the class for damages purposes under Rule 23(b)(3) due to a finding of an absence of predominant commonality in the class, Plaintiff still sought certification solely for injunctive relief purposes under Rule 23(b)(2).

[4] (See Pl. Exs. Docs. 88-84 and 88-74.) At the hearing on the Motion for Class Certification, the Court granted in part and denied in part Defendants' Motion to Strike these affidavits. The Court found that the affidavits did not meet the standards required for expert testimony under *Daubert v. Merrell Dow Pharms., Inc,* 509 U.S. 579 (1993). However, the Court considers the information in the affidavits of Edward Devine (Pl. Ex. Doc. 88-84) and Tracy Saffos (Pl. Ex. Doc. 88-74) to the extent it is based solely upon their personal observations of conditions in the apartment complex during their walk-through inspection of the complex.

had brought these issues to the attention of the management of the complex repeatedly prior to this litigation. Defendants dispute Plaintiff's contentions regarding these alleged conditions within the apartment community and contend that the Stone Ridge management responded on a timely and adequate basis to all tenant complaints.[5]

The maintenance, management and habitability problems at the Stone Ridge apartment complex that lie at the heart of this lawsuit are of understandable concern to Plaintiff and proposed class members. However, Plaintiff's descriptive evidence and allegations presented here are insufficient as a matter of law to establish that these apartment conditions are both the result of a common systemic source and also similarly impact members of the putative plaintiff class. Thus, for the legal and evidentiary reasons discussed below, Plaintiff's motion does not form a proper basis for certification of the proposed class under Rule 23, and the Court therefore **DENIES** Plaintiff's motion.

## II.   CLASS CERTIFICATION REQUIREMENTS AND ISSUES

A party seeking to maintain a class action bears the burden of showing that all requirements for class certification under Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Klay v. Humana, Inc.* 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond*

---

[5] The Court does not delve here into the details and merits of whether Defendants' management and maintenance response was adequate. It does note that the testimony of Rebecca Hemperley, a Stone Ridge property manager, might suggest a level of management imperviousness to tenant concerns. (*See* Hemperley Dep. at 291-292, Doc. 88-21 (testifying that a variety of extreme problems involving water damage, mold issues, and roof leaks — if such exist — would not impact Hemperley's view that Stone Ridge was a luxury apartment community).)

& *Indem. Co.*, 553 U.S. 639 (2008). Although a district court should not determine the ultimate merits of the plaintiff's claims at class certification, it must assess the merits of the plaintiff's case for the purpose of evaluating whether the claims meet the requirements of Rule 23. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1255, 1266 (11th Cir. 2009). "The class determination generally involves considerations that are 'enmeshed in the actual and legal issues comprising the plaintiff's cause of action.' . . . 'The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.'" *Id.* (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n.12 (1978)).

The proposed plaintiff class of past and current apartment complex residents affected by Defendants' alleged practices here clearly meets the numerosity requirement of Rule 23(a)(1). The named Plaintiff and his counsel also meet the adequacy of representation requirements of Rule 23(a)(4). They have shown that they will vigorously prosecute this action with the benefit of both competent counsel and adequate financing and that no substantial conflict of interest exists between the named plaintiff representative and the class. *See Valley Drug. Co. v. Geneva Pharm, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003); *Brooks v. So. Bell Tel & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990). However, Plaintiff's motion founders on the existence of questions of law or fact common to the class and the associated issue of typicality, as required under Rule 23(a)(2) and (a)(3).

Questions of commonality and typicality are highly related. The Supreme Court explained in *General Telephone Company of the Southwest v. Falcon*,

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n. 13 (1982).

The Supreme Court's treatment of commonality issues in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557-59 (2011) is instructive. The plaintiffs in *Wal-Mart* asserted that the Rule 23(b)(2) common questions involved the company's alleged common practice nationwide of allowing supervisors to exercise their personnel authority in making pay and promotion decisions in a manner infected by gender discrimination. Statistical data, expert affidavits, as well as other evidence were introduced to demonstrate both the commonality and merits of Plaintiffs' substantive allegations. The Court held that the proposed plaintiff class of female employees could not satisfy Rule 23's commonality threshold requirement because class members' gender discrimination claims ultimately would entail a host of individualized evidentiary proof issues because they came from a multitude of jobs throughout the company with different supervisors in different stores. The Court also noted that there was no evidence of a company policy of discrimination at issue in the case. Finally, damages issues would have to be determined on a completely individualized basis. Thus, the Court

concluded the plaintiffs failed to present convincing proof of a company-wide discriminatory pay or promotion policy or practice sufficient to satisfy the commonality requirement under Rule 23.[6]

The Eleventh Circuit's class action certification case law for more than a decade foreshadowed the principles set forth in the *Wal-Mart* case. In *Rutstein v. Avis Rent-A-Car Systems, Inc.*, for example, the Eleventh Circuit found that commonality deficiencies precluded class certification in a non-employment religious discrimination in contracting case brought pursuant to Rule 23(b)(3) on behalf of Jewish owned companies and individuals against Avis. *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1234-1236 (11th Cir. 2000). Even though the plaintiffs contended that Avis's policy or practice of religious discrimination predominated in its corporate contracting with the plaintiffs, the Court found that ultimately the plaintiffs' claims would stand or fall on the highly fact issues specific to each individual case. *Id.*; *see also Vega*, 564 F.2d at 1270 (holding that a plaintiff's breach of contract claim for unpaid wages for commissions on behalf of class of T-Mobile's former sales employees did not establish requisite commonality because the plaintiff could not establish that class members were employed under a common contract and in the absence of

---

[6] The Court distinguished the evidence presented in *Wal-Mart* from that in *Teamsters v. United States*, 431 U.S. 324 (1977). In *Teamsters*, statistical as well as anecdotal class member testimony of discrimination was presented on behalf of roughly one of every eight members of the class and these testifying class members were deemed generally representative of the company's operational centers employing the largest numbers of class members. The strength of this evidence demonstrated that the company operated under a general policy or practice of discrimination in contrast to the weaker, less representative anecdotal evidence presented on behalf of the Plaintiffs in *Wal-Mart*. *Wal-Mart*, 131 S.Ct. at 2556.

such, each employee would have to establish the mandatory elements of his contract claim based on the individualized facts and circumstances attending his original hiring, agreement as to compensation rules, specific evidence as to how commissions would be handled at that time, and comparable factors); *Cooper v. Southern Co.*, 390 F.3d 695, 715 (11th Cir. 2004) (affirming district court's denial of class-certification on commonality and typicality grounds in an employment discrimination class action challenging an array of personnel practices and commenting that where such broad claims are asserted, commonality would have "to be established by showing that the discrimination sustained was either part of an overarching pattern and practice of intentional discrimination on the part of the defendants or the result of the discriminatory disparate impact of a facially neutral employment policy"),[7] *overruled in part on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006); *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 1996 (11th Cir. 1996) (affirming the district court's denial of class certification in employees' ERISA benefits case on commonality and typicality grounds where the plaintiffs could not establish that Delta's public representations regarding its Special Retirement Plan similarly impacted individual class members retirement decisions and where the plaintiffs had yet to prove the existence of written ERISA plan documents guaranteeing medical benefits that would establish a basis for class relief, if produced).

---

[7] The Court of Appeals further explained that to establish a "pattern or practice" of disparate treatment, the plaintiff must show that intentional discrimination was the employer's "standard operating procedure." *Cooper*, 390 F.3d at 716 (citing *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1274 (11th Cir. 2000)).

In contrast to the above cases, the Court notes that the Eleventh Circuit has found class certification warranted where common questions of fact and law predominantly and similarly defined class members' efforts to prove liability and entitlement to injunctive relief and monetary relief. *Klay*, 382 F.3d at 1255. Thus, in *Klay*, the Circuit recognized that physicians' RICO claims against the major national health maintenance organizations ("HMOs") based on an alleged conspiracy to underpay physicians through the use of a specific undisclosed method of programming of insurance company billing and related reimbursement strategies constituted a uniform process subject to classwide proof that systematically impacted the putative class members in an equivalent manner. These practices were adopted pursuant to corporate policies that "constitute the very heart of the plaintiffs' RICO claims . . . and would necessarily have to be re-proven by every plaintiff if each doctor's claims were tried separately." *Id.* at 1257. In the instant case, however, the water and mold management as well as other maintenance practices at issue were neither formally adopted as a uniform management policy nor did these practices impact tenants' apartment in the same way or degree.

Further, in a class action seeking certification pursuant to Rule 23(b)(3) for damages, the commonality predominance inquiry is far more demanding than in a Rule 23(b)(2) injunctive relief case. Not only must questions of law or fact common to class members predominate over any questions affecting only individual members, these common questions "must predominate such that they

'ha[ve] a direct impact on every class member's effort to establish liability'" and outweigh any individualized issues of liability. *Vega*, 564 F.3d at 1270 (quoting *Klay*, 382 F.3d at 1255); *see also Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1366 (11th Cir. 2002) (holding that Rule 23(b)(3) class certification is not sustainable where "claims will involve extensive individualized inquiries on the issues of injury and damages"), *abrogated on other grounds by Bridge*, 553 U.S. 639.

Sufficient commonality and typicality similarly cannot be established in the instant case for purposes of class certification for injunctive relief under Rule 23(b)(2) or damages relief under Rule 23(b)(3). Resolution of the class claims raised here would require resolution of significant questions of fact and law relating to the individual class members' claims for both liability and damages purposes. Plaintiff class members are likely to have been affected in a different manner or extent — or not at all — by Defendants' alleged maintenance conditions and management practices at Stone Ridge. Thus, though the residents may face some of the same serious building maintenance problems, their claims will rise and fall on the specific factual and legal circumstances of their individual cases rather than due to a predominant cause or building deficiency similarly operative in all apartments. While the evidence suggests that some range of maintenance, mold, and water leakage problems existed throughout the apartment complex, the actual scope and nature of these problems will be different depending on the apartment's location, specific maintenance history, and other factors.

Plaintiff points to Defendants' mismanagement as the unifying feature of the alleged adverse conditions suffered by the Stone Ridge tenants — and the focal point of Plaintiff's theory of liability. However, "mismanagement" hardly constitutes the type of unifying mechanism federal courts currently look to as a defined unlawful practice that will impact class members in a common manner, consistent with the class certification requirements of Federal Rule of Civil Procedure 23. Indeed, if an employer's alleged systemic management practice of racial or religious discrimination in its employment or contracting practices may not be deemed to trigger common questions of fact and law, the Court is hard pressed to certify a class of residents adversely impacted by poor building management practices (without a common theme of discriminatory motive) that manifest and injure individual residents in hundreds of apartments situated in diverse ways. *See Wal-Mart*, 131 S. Ct. at 2552-2558[8]; *Falcon*, 457 U.S. at 157-159; *Rutstein*, 211 F.3d at 1234-1236.

Plaintiff nevertheless argues that ample applicable precedent in comparable cases supports the Court's certification of the plaintiff class. (Pl.

---

[8] Indeed, in her decision concurring in part and dissenting in part in *Wal-Mart*, Justice Ginsburg illuminated that the Supreme Court's *Wal-Mart* opinion crystallized the drift in class certification law from a prior era when class actions were deemed properly based on a unifying theme of discrimination even though they might be implemented through a host of individual subjective management decisions. Justice Ginsburg's opinion critically points out that the majority opinion had focused on the dissimilarities within the proposed class rather than the common questions and evidence of discrimination in managers' discretionary implementation of pay and promotion policies historically relied upon in discrimination class action litigation. She concludes that the majority had effectively imported Rule 23(b)(3)'s requirement that common questions "predominate" in a Rule 23(b)(3) damages action into Rule 23(a)'s threshold requirements for class certification that do not contain such a predominance requirement. *Wal-mart*, 131 S.Ct. at 2565-66 (Ginsburg, J., concurring in part and dissenting in part).

Memo. Law Supp. Mot. Class Certification at 42-43, Doc. 88-1 (citing *Duncan v. Sabal Palms I Assocs.*, No. 89–3 CIV–FtM–10 (A), 1990 WL 10600304, at *2-3 (M.D. Fla., Jun. 7, 1990) (certifying a federal housing project tenants' class action seeking injunctive and damages relief based on the defendants' failure to comply with HUD regulations relative to safety and sanity as well as Florida statutes governing housing conditions); *McMillon v. State of Hawaii*, 261 F.R.D. 536 (D. Hawaii, 2009) (certifying class action of public housing residents with mobility and other disabling impairments who alleged that the defendants maintained unlawful building conditions that restricted their access to and capacity to safely inhabit the building towers operated by the defendants as well as capacity to participate in services within the towers).) The Court doubts that *Duncan* would survive the stringent class certification analysis now required under binding Supreme Court and Eleventh Circuit authority. And *McMillon* entailed more precise common factual issues that would in turn frame a common legal inquiry, such as the predictable common impact of specific architectural barriers and elevator deficiencies on disabled individuals with limited mobility.

Plaintiff also argues that *Terrill v. Electrolux Home Products, Inc.*, 295 F.3d 671 (7th Cir. 2013), a nation-wide washing machine defect product liability class action case, supports its contention that class certification is warranted here. However, liability in *Terrill* revolved around a common central issue: whether the evidence would prove the washing machines' "convoluted bellows" were defective. If so, the defendants' liability would be determined for all class

members' claims. All class members in *Terrill* would otherwise have been required to establish the same proof of defective manufacture. By contrast, in the instant case, class members would have to prove facts relating to Defendants' handling and maintenance of each of their individual apartments even if they were successful in presenting probative evidence of Defendants' deficient overall maintenance and building management practices.

Defendants have additionally identified a variety of ways that tenants' disparate legal postures in this case may ultimately fundamentally differ. These issues play out in Mr. Cox's own case and highlight the typicality issues that affect his class representative status as well as commonality deficiencies. Defendants argue that Plaintiff's claims must cover the entire potential liability period to be deemed typical to render him an "adequate" representative. Specifically, Defendants argue that Plaintiff Cox waived a swath of his own rights because of his multiple lease renewals. Paragraph 29 of the standard Stone Ridge lease provides that the resident agrees that he accepts the apartment "as is" and that it is in a tenantable condition. Paragraph 36 shortens the statute of limitations on tenant claims to six months after the termination of the lease agreement. Based on the combination of these provisions, Defendants thus argue that Mr. Cox could only raise claims for damages and injuries suffered since the execution of his most recent lease on November 28, 2012. (*See* Pl. Ex. Doc. 88-6 at 12.) However, whether this waiver is enforceable under Georgia law is another question. *See* O.C.G.A. § 13-8-2(b) (providing that contractual agreement

relative to the repair or maintenance of a building structure that requires one party to hold another harmless for liability or damages arising out of injury to persons or property caused by negligence is against public policy and void and unenforceable); *Kennedy Dev. Co., Inc. v. Camp*, 719 S.E.2d 442, 444-445 (Ga. 2011) (broadly construing the scope and intent of the statute in holding void certain hold harmless or indemnification provisions); *Country Club Apartments, Inc. v. Scott*, 271 S.E.2d 841, 842 (Ga. 1980) (same).

The Court finds that Mr. Cox has clearly experienced since the renewal of his current lease a new wave of mold and water leakage damage[9] such that he could be viewed as having claims potentially typical of other tenants.[10] However, the lease renewal issues here are only one of many legal circumstances that individually may distinguish class members' claims, as Defendants' evidence showed. Some tenants' claims would be barred by virtue of prior dispossessory litigation in which they were involved. Counter-claims for set-offs as a result of adverse property conditions are deemed compulsory in dispossessory litigation under Georgia law. *See Trust Co. Bank of Georgia v. Shaw*, 355 S.E.2d 99, 101 (Ga. Ct. App. 1987) (citing O.C.G.A. § 9-11-13(a) and *Idowu v. Lester*, 337 S.E.2d

---

[9] As Mr. Cox's supplemental affidavit and attached evidence (Doc. 121-1) are relevant to proof of Plaintiff's claims, the Court **DENIES** Defendants' Motion to Strike the Supplemental Declaration of Christopher Cox in Support of Plaintiff's Motion for Class Certification [Doc. 138].

[10] *See E. Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (reiterating Rule 23's requirement that a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members). "Neither the typicality nor the commonality requirement 'mandates that all putative class members share identical claims' . . . .' Nevertheless, the named plaintiffs' claims must still share 'the same essential characteristics as the claims of the class at large.'" *Cooper*, 390 F.3d at 714 (internal citations omitted).

386, 387-88 (Ga. Ct. App. 1985)); *Butler v. The Lamar Grp., LLC, et al.*, No. 11C-01983-S3, slip op. at 3-4 (State Ct. Gwinnett Cnty, Ga., Sept. 8, 2011). Other tenants' claims may have been waived because they, like Mr. Cox, were aware of the precise conditions they complain of at the time they signed their lease contracts.[11] *See, e.g., Schill v. A.G. Spanos Dev., Inc.*, 457 S.E.2d 204, 205-206 (Ga. Ct. App. 1995). Thus, litigation of the claims of some residents would require that they rebut defenses that are individual to their own rental of the apartment, including lease renewals, evictions and associated judgments on mandatory counter claims.

In sum, based on its review of the record and the parties' arguments, the Court finds that the totality of identified commonality and typicality deficiencies are fatal to Plaintiff's class certification motion under binding Supreme Court and Eleventh Circuit authority. Accordingly, Plaintiff's Motion for Class Certification [Doc. 88], whether treated under the prism of Rule 23(b)(2) or 23(b)(3), must be **DENIED**.

### III. JURISDICTION AND JOINDER

#### A. Jurisdiction

Defendants removed this case to federal court based on the existence of jurisdiction under both the Class Action Fairness Act ("CAFA") and traditional diversity jurisdiction with respect to Plaintiff's individual claims. (Not. Removal,

---

[11] Section 29 of the standard Stone Ridge contract contained a waiver provision based on the tenant's acceptance of the apartment unit "as is" and waiver of any habitability claim as of the date of the lease execution. Of course, this waiver could not waive claims that the resident might have relative to conditions that evolved or changed after the date of the lease execution.

Doc. 1.) The Court's denial of class certification does not disturb the grant of subject matter jurisdiction conferred by CAFA over this case pursuant to 28 U.S.C. § 1332(d). *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) ("[J]urisdictional facts are assessed at the time of removal; and post-removal events (including non-certification, de-certification, or severance) do not deprive federal courts of subject matter jurisdiction."). Thus, despite the denial of class certification, Plaintiff may continue to litigate his individual claims in this Court on the basis of CAFA jurisdiction.

However, the Court finds that diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) is lacking. Diversity jurisdiction requires complete diversity between the parties, meaning that "the citizenship of every plaintiff must be diverse from the citizenship of every defendant." *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005). For purposes of diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).

Defendants in this case are limited liability companies and failed to properly allege their citizenship for purposes of § 1332(a). Upon the Court's request, Defendants informed the Court that the membership of each remaining Defendant LLC includes individual residents of Georgia. (Doc. 142.) The Court therefore concludes that the Defendants are citizens of Georgia and that complete

diversity between the parties is impossible because Plaintiff is also a citizen of Georgia.[12] Thus, diversity jurisdiction under § 1332(a) never existed in this case.

### B. Joinder

During the June 20, 2014 hearing, the Court contemplated the possible joinder of related claims by other individual plaintiffs following a denial of class certification. However, this discussion was before the Court learned that the parties were not completely diverse.

In civil cases where § 1332 forms the basis of jurisdiction, the joinder of claims by additional parties must be consistent with the jurisdictional requirements of 28 U.S.C. § 1332. 28 U.S.C. § 1367(b). Here, jurisdiction exists solely under § 1332(d). Given that the Court has denied class certification, the joinder of claims by additional parties would be inconsistent with the jurisdictional requirements of § 1332. Thus, in the absence of § 1332(a) jurisdiction, joinder of additional plaintiffs would be inappropriate

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Class Certification [Doc. 88] and **DENIES** Defendants' Motion to Strike [Doc. 138]

---

[12] Defendants provided the Court with the residence and not the citizenship of the LLC members. *See Travaglio v. Am. Express Co., et al.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994))). Given that Defendants' notice was made in response to the Court's inquiry about citizenship, the Court assumes Defendants' representations as to residence also relate to the domicile, and thus citizenship, of individual LLC members.

Plaintiff's supplemental affidavit and related materials.[13]  The Court **REFERS** this case to the next available Magistrate Judge for mediation of Mr. Cox's individual claims.  The mediation should be concluded within forty-five (45) days of the date of this Order.  This case shall be **STAYED** and **ADMINISTRATIVELY CLOSED** during the period allocated for mediation.  If mediation proves unsuccessful, the parties shall submit within ten (10) days of the conclusion of the mediation a jointly stipulated schedule for discovery not to exceed forty-five (45) days so as to wrap-up any discovery associated with Mr. Cox's individual claims.  Upon the parties' submission of the stipulated discovery schedule, the Clerk is **DIRECTED** to re-open the case.

**IT IS SO ORDERED** this 30th day of September, 2014.

*(signature)*
**Amy Totenberg**
**United States District Judge**

---

[13] As explained in note 1, the Court **DENIES AS MOOT** Defendants' Motion to Exclude and Motion for Sanctions [Doc. 108].